Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM T. HART | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 04 C 3553 | DATE | DECEMBER 8, 2004 |
| CASE TITLE | RAMI PAK, etc. v. ADMIRAL INSURANCE COMPANY, etc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

| (1) | ☐ | Filed motion of [ use listing in "Motion" box above.] |
|---|---|---|
| (2) | ☐ | Brief in support of motion due _____. |
| (3) | ☐ | Answer brief to motion due_____. Reply to answer brief due_____. |
| (4) | ☐ | Ruling/Hearing on _____ set for _____ at _____. |
| (5) | ☐ | Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (6) | ☐ | Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (7) | ☐ | Trial[set for/re-set for] on _____ at _____. |
| (8) | ☐ | [Bench/Jury trial] [Hearing] held/continued to _____ at _____. |
| (9) | ☐ | This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2). |
| (10) | ■ | [Other docket entry] Defendant's motion to dismiss construed as a motion for summary judgment [7-1, 12-1] is granted. The Clerk of the Court is directed to enter judgment in favor of defendant and against plaintiff dismissing plaintiff's cause of action with prejudice except that Count II of the Complaint is dismissed without prejudice. |
| (11) | ■ | [For further detail see attached Memorandum Opinion and Order.] |

| | No notices required, advised in open court. | | 2 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✔ | Notices mailed by judge's staff. | | DEC 9 2004 date docketed | |
| | Notified counsel by telephone. | | | 13 |
| | Docketing to mail notices. | | | |
| ✔ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | cw | courtroom deputy's initials | DEC 8, 2004 date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RAMI PAK, individually and as )
assignee of LMB Distributors, )
　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff, 　　　　)
　　　　　　　　　　　　　　　　　)
　　v.　　　　　　　　　　　　　 ) No. 04 C 3553
　　　　　　　　　　　　　　　　　)
ADMIRAL INSURANCE COMPANY, 　　 )
a corporation, 　　　　　　　　 )
　　　　　　　　　　　　　　　　　)
　　　　　　　Defendant.　　　　 )

DOCKETED
DEC 0 9 2004

## MEMORANDUM OPINION AND ORDER

In this case (the "Declaratory Action"), plaintiff Rami Pak seeks a declaration that defendant Admiral Insurance Company is liable to pay a judgment that Pak obtained against two of Admiral's alleged insureds in a state court tort action (the "Underlying Action"). Defendant moved to dismiss the Declaratory Action, contending that Count I is subject to dismissal because the policy defendant issued did not provide coverage as of the date of Pak's injury and that Count II is subject to dismissal for lack of jurisdiction because Pak does not have standing to bring the Declaratory Action as concerning defendant's liability to one of the alleged insureds. The latter contention is labeled as being raised pursuant to Fed. R. Civ. P. 12(b)(1). When the

parties appeared for the presentation of defendant's motion, the court inquired as to whether there were any disputed facts and whether any discovery was necessary. Neither party requested additional time for discovery. The court advised the parties that defendant's motion would be converted to one for summary judgment and that plaintiff could rely on additional documents or other evidence in responding to the motion and that defendant could rely on evidence outside the complaint in its reply. The parties were not required to file Local Rule 56.1 statements. In her answer brief, however, plaintiff asserts a cursory objection to defendant's motion being unsupported by affidavits or a Rule 56.1 statement. Defendant, however, did not rely on any allegations or documents outside the complaint. No affidavit was necessary and the court did not require a Rule 56.1 Statement. Plaintiff did not request additional time for discovery at the time the motion was converted to one for summary judgment and also did not file any motion pursuant to Fed. R. Civ. P. 56(f). The pending motion may appropriately be treated as cross motions for summary judgment. See generally Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 2720 at 339-55 (3d ed. 1998). To the extent the materials presented show one party or the other is entitled to a judgment based on undisputed facts, summary judgment will be entered in favor of the appropriate party.

On May 12, 1999,[1] Pak filed the Underlying Action in the Circuit Court of Lake County, Illinois. Named as defendants in the Underlying Action were LMB Distributors, 2Xtreme Performance International, Ronnie Milsap, and Dr. Jack Watkins. 2Xtreme was alleged to be the manufacturer of Neurotein, a pill advertised as effecting weight loss. LMB was alleged to be "the seller and distributor" of Neurotein and the defendant who sold plaintiff a bottle of Neurotein on May 10, 1997. Milsap and Watkins were alleged to be endorsers of the product in advertising. It was alleged that Pak began ingesting Neurotein on May 13, 1997 as directed by the instructions on the bottle. On May 18, 1997, plaintiff suffered a myocardial infarction allegedly caused by the Neurotein she had taken. It was further alleged: "As a direct and proximate result of the Defendants' wrongful conduct the Plaintiff has suffered serious and permanent heart damage which limits her physical activities and employment and experienced pain and suffering and will in the future incur large medical expenses and otherwise suffer economic harm."

On June 11, 1999, in the Underlying Action, Lavern Brewer filed a "pro se" appearance on behalf of LMB. On July 27, 1999,

---

[1] In the Declaratory Action, plaintiff alleges that the Underlying Action was filed on June 1, 1999. However, a copy of the Underlying Complaint is attached to the Declaratory Complaint. The copy of the Underlying Complaint is stamped as being filed on May 12, 1999. In any event, whether the Underlying Complaint was filed on May 12 or June 1 is not material to the pending motion.

- 3 -

the law firm of Charysh and Schroeder, Ltd. filed an appearance on 2Xtreme's behalf, noted that 2Xtreme had filed a bankruptcy petition in Colorado, and moved to place an automatic stay on the Underlying Action. The Circuit Court granted that motion and further ordered that "this case shall be placed on the bankruptcy call" and "that 2Xtreme's counsel shall inquire as to any insurance coverage that may allow this case to be removed from the bankruptcy call."

In a letter dated August 3, 1999, Pak's counsel wrote to Charysh and Schroeder referencing the July 27 order regarding inquiring into insurance coverage. Pak's counsel suggested that they would be able to enter into a stipulation limiting liability to the amount of the insurance policy and thereby avoid the bankruptcy stay.

In a letter from Admiral to 2Xtreme dated August 11, 1999, Admiral acknowledged receiving a copy of the Underlying Complaint and stated that there is a "possible problem" with coverage under 2Xtreme's insurance policy (the "Policy") and that a defense would be provided "subject to a complete Reservation of Rights." It is further explained:

> As stated in your Insuring Agreement cited above, your policy applies to bodily injury only if such bodily injury did not occur before the Retroactive Date shown in the policy Declarations. As the plaintiff alleges in her Complaint that she sustained a myocardial infarction on May 18, 1997, we must advise you that there will be no coverage under your policy

- 4 -

> for any bodily injury which is deemed to have
> occurred prior to the Retroactive Date of
> October 3, 1997. We would, therefore, recommend
> that you forward a copy of the above Complaint to
> any prior Commercial General Liability or
> Products/Completed Operations Liability insurance
> carriers who may have insured 2Xtreme Performance
> International for the date of occurrence alleged
> in plaintiff's Complaint.

The letter also advises 2Xtreme that the defense was being assigned to Charysh and Schroeder.

On September 14, 1999 in the Underlying Action, Pak filed a motion for a status hearing regarding 2Xtreme's bankruptcy. Although Charysh and Schroeder had previously filed an appearance on 2Xtreme's behalf, notice of the motion was mailed directly to 2Xtreme and not served on counsel. On September 28, the state court entered an order stating that no proof of bankruptcy or evidence regarding insurance had been provided and therefore it was ordered that the case was removed from the bankruptcy call, defendants had 28 days to answer, and discovery was to proceed. Defendant contends that plaintiff's arguments based on this order should be ignored because the motion was not properly served. Defendant, however, does not dispute that Charysh and Schroeder were aware that the case had been reinstated and that a further status hearing was set in the case, nor is there any indication that any motion was filed to place the case back on the bankruptcy call.

Plaintiff provides a December 17, 1999 letter from attorney Ross Jones in Beaumont, Texas. The letter is addressed to an employee of the federal penitentiary in Beaumont. Jones represents that he is assisting the Charysh and Schroeder law firm in being able to interview Beaumont inmate John Polk in relation to the Underlying Action. Polk is described as being or having been a principal or employee of 2Xtreme. Reference is made to wanting to interview him prior to a December 22 status hearing in the Underlying Action. In early January 2000, Jones was informed that Polk declined to be interviewed regarding the case and Jones relayed the information to Charysh and Schroeder.

On January 13, 2000, Admiral offered Pak $20,000 to settle the Underlying Action. On January 18, Charysh and Schroeder informed Pak that, absent a settlement, the attorneys would be withdrawing as counsel for 2Xtreme because of an inability to effectively communicate with their client. In a letter dated February 28, 2000, Pak rejected the settlement offer.

In a letter to Polk dated March 7, 2000, Admiral informed him that it would continue to provide representation in the Underlying Action until March 20, 2000. However, it also stated that it would discontinue representation as of that date unless he signed the letter indicating he would cooperate in the representation as required by cited terms of the Policy. Such

cooperation included being interviewed by the attorneys representing 2Xtreme. The letter also again indicated that there would be no coverage for bodily injury occurring prior to October 3, 1997 and again advised that a copy of the Underlying Complaint should be forwarded to 2Xtreme's prior insurer. Polk did not sign the letter indicating he would cooperate.

On March 2, 2000, Charysh and Schroeder had already filed a motion to withdraw, but it was not noticed for presentation until April 5, 2000. In the motion, it is stated that 2Xtreme is out of business and had no existing business address. Polk was described as being 2Xtreme's chief executive officer and only authorized representative. Polk's address at a correctional facility is noted in the motion. There is no express statement that Polk was not cooperating. The only stated reason for withdrawal was "the conduct of 2xtreme renders it unreasonably difficult for Charysh & Schroeder, Ltd. to carry out its employment effectively." The notice of motion indicates that the motion was mailed to Pak's counsel, 2Xtreme's registered agent, and Polk. The motion for leave to withdraw was granted on April 20. Charysh and Schroeder sent a copy of the order to Pak's counsel.

On April 18, 2000, by fax and United States mail, Pak's attorneys sent Charysh and Schroeder a letter stating that Pak

had authorized them to settle for $125,000 and also indicating a willingness to participate in a pretrial conference.

In a letter dated April 20, 2000, with a copy being sent to Polk, Admiral advised Pak that it had received the April 18 offer of settlement. However, Admiral advised Pak that it had determined that her injury occurred outside the time period of coverage and therefore coverage would be denied to 2Xtreme. Admiral also indicated that it could deny coverage based on Polk's failure to cooperate and that it had inquired from Polk, but received no response regarding any policy covering the earlier time period. Admiral also withdrew its prior settlement offer of $20,000.

On May 17, 2000, Admiral filed a complaint for declaratory judgment in the Circuit Court of Lake County, Illinois (the "Admiral Declaratory Action"). Named as defendants were 2Xtreme, Polk, and Pak's attorneys in their capacity as Pak's counsel. Admiral sought a declaration that 2Xtreme was not entitled to any coverage or defense for Pak's claim against it because the date of injury fell outside the Policy's coverage period. Alternatively, Admiral sought a declaration that coverage should be denied based on a failure to cooperate. On August 16, 2000, Pak's attorneys were dismissed from the case and Admiral was granted leave to file an amended complaint adding Pak as a defendant. Pak, however, was never served and she was

dismissed from the action on December 19, 2000. Plaintiff contends that Polk and 2Xtreme were not served. However, there is a return of service completed by a Texas constable showing that Polk was personally served on June 1, 2000 at 2:00 p.m. The return of service does not indicate that Polk was also served as the agent of 2Xtreme, but defendant contends that service on Polk also constitutes service upon 2Xtreme.

In the Underlying Action on January 10, 2001, a default judgment was entered in favor of Pak and against 2Xtreme and LMB in the amount of $1,200,000 plus costs.

In the Admiral Declaratory Action on February 25, 2001, a default judgment was entered in favor of Admiral and against 2Xtreme and Polk declaring that the Policy did not provide coverage for claims against them in the Underlying Action and Admiral does not owe either of them indemnity or a defense for Pak's claims.

On April 7, 2004, Lavern Brewer, on behalf of LMB, signed a written assignment in which any right LMB had to compel from Admiral the payment of the January 10, 2001 judgment against it was assigned to Pak.

On October 3, 1997, Admiral issued the Policy to 2Xtreme. It is a claims made policy that covered claims made against an insured during the policy period. However, the Policy also provides that any claim for bodily injury was not covered if the

bodily injury "occur[red] before the Retroactive Date, if any, shown" on the declaration page of the Policy. "Bodily injury" is defined as meaning "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." The Policy provided that October 3, 1997 was the Retroactive Date. The initial policy period ended September 23, 1998 and was renewed through September 11, 1999. The claims against 2Xtreme and LMB were made on May 11, 1999, which was within the policy period. It is Admiral's position, however, that the bodily injury upon which the claims are based occurred in May 1997, which is prior to the October 3, 1997 Retroactive Date. The Policy has an additional insureds endorsement for vendors. No specific vendors are named, but the endorsement covers "all vendors" and "all insured [2Xtreme] products". . . "which are distributed or sold in the regular course of the vendor's business." There are some exclusions contained in the vendor endorsement, but there is no contention that any apply.

Plaintiff points to one document that indicates that the original application for insurance may have been submitted prior to October 3, 1997. Plaintiff, however, does not point to any evidence supporting a genuine factual dispute as to whether the actual Retroactive Date should be other than October 3, 1997. Plaintiff does not disagree with defendant's argument that plaintiff's bodily injury should be considered to have occurred

sometime prior to October 3, 1997. There is no legal or factual dispute as to Pak's injury falling outside the coverage of the Policy's terms. Pak, however, contends that Admiral has waived its opportunity to deny coverage or is estopped from doing so because it failed to either provide a defense to the Underlying Action or bring a prompt and procedurally proper declaratory action for noncoverage.

Admiral contends that Pak may not bring any claim based on Admiral allegedly being liable for the judgment entered against 2Xtreme. Unlike LMB, 2Xtreme has not entered into any assignment agreement with Pak. Pak does not point to any case law permitting a successful tort plaintiff to simply step into the shoes of the defendant and bring an independent action against the defendant's insurer based on the insurance contract between the defendant and the defendant's insurer. Instead, in such a situation, the plaintiff, by entry of the judgment, has become a judgment creditor against the defendant. As a judgment creditor of 2Xtreme, Pak could have brought a garnishment action in the name of 2Xtreme and against Admiral. See Buckner v. Causey, 311 Ill. App. 3d 139, 724 N.E.2d 95, 104 (1st Dist. 1999).

> A garnishment proceeding is a remedial measure designed to reach assets belonging to the judgment debtor and make those assets available for application in payment of the judgment against him. Zimek v. Illinois National Casualty Co., 370 Ill. 572, 574, 19 N.E.2d 620 (1939). It

>   is not a distinct and separate suit, but is an
>   ancillary step in the original action. Baron v.
>   Villareal, 100 Ill. App. 2d 366, 373, 241 N.E.2d
>   227 (1968). In such a proceeding, the judgment
>   creditor stands in the shoes of the judgment
>   debtor (Dewey ex rel. Smith v. United States
>   Fidelity & Guaranty Insurance Co., 32 Ill.
>   App. 3d 313, 316, 336 N.E.2d 518 (1975)) and,
>   consequently, the claim asserted against the
>   garnishee must be one which the judgment debtor
>   could have maintained and enforced in his own
>   name (Baron, 100 Ill. App.2 d at 373, 241 N.E.2d
>   227). The rights of the garnishee are protected
>   as the trial of such a claim must be conducted as
>   in other civil cases. 735 ILCS 5/12-711(c) (West
>   1996). The Code of Civil Procedure specifically
>   provides that any judgment entered against a
>   garnishee shall be entered "in favor of the
>   judgment debtor to whom the garnishee is indebted
>   * * * for the use of the judgment creditor." 735
>   ILCS 5/12-711(d) (West 1996). The reason for
>   this requirement is obvious. In a garnishment
>   proceeding, it is the legal interest of the
>   judgment debtor that is being asserted against
>   the garnishee, albeit by the judgment creditor.
>   Baron, 100 Ill. App. 2d at 372, 241 N.E.2d 227.

Id.[2]

Pak's present action is not a garnishment proceeding. Even if Pak were to attempt to amend her complaint to add such a claim, it would not be possible because a garnishment proceeding is not an independent action, but an action ancillary to the proceeding in which the judgment was obtained. Id.; Chandler v.

---

[2]In the Declaratory Action, Pak alleges that Admiral acted in bad faith in representation of 2Xtreme. Illinois law is unclear as to whether a judgment creditor may also raise a bad faith claim, see 215 ILCS 5/155, against the judgment debtor's insurer. Compare Buckner, 724 N.E.2d at 103-05, with Chandler v. Doherty, 314 Ill. App. 3d 320, 731 N.E.2d 1007, 1010-11 (4th Dist. 2000).

Doherty, 314 Ill. App. 3d 320, 731 N.E.2d 1007, 1010 (4th Dist. 2000). Also, it would have to be brought in the name of 2Xtreme, not individually by Pak. Since Pak has not brought a garnishment proceeding and has not obtained an assignment of any claim 2Xtreme may have against Admiral, the Count II claim based on Admiral's coverage for 2Xtreme's liability will be dismissed. Still to be considered is whether Admiral should be required to provide coverage for LMB's liability.

Neither Pak nor LMB was a party to the judgment entered in the Admiral Declaratory Action. Therefore, regarding Count I, it is unnecessary to determine the effectiveness, if any, of the judgment in the Admiral Declaratory Action. Also, there is no dispute that Admiral provided no representation to LMB in the Underlying Action. The question before the court is whether Admiral is estopped from raising defenses under the Policy, in particular the Retroactive Date clause, by failing to provide representation to LMB in the Underlying Action. Admiral contends it had no duty to provide representation to LMB because LMB did not request a defense and it was not a named insured. Pak contends Admiral had such a duty because the Policy provided that vendors who sold or distributed 2Xtreme products were insureds under the Policy; Admiral was aware that LMB was also a defendant in the Underlying Action in which Admiral provided some

representation to 2Xtreme; and Admiral was aware that LMB was alleged to be a seller and distributor of Neurotein.

Pak contends that Admiral cannot rely on any Policy provision in order to deny indemnification of LMB's liability because it failed to either (a) represent LMB under a reservation of right or (b) bring a declaratory action as against LMB. Pak, however, overstates the rule. Pak ignores that this estoppel rule does not apply if there was no duty to defend. See Progressive Insurance Co. v. Universal Casualty Co., 347 Ill. App. 3d 10, 807 N.E.2d 577, 587 (1st Dist. 2004); American Casualty Co. of Reading, Pa. v. Filco, 2004 WL 2674309 *2 (N.D. Ill. Oct. 15, 2004).

> An insurer's duty to defend its insured in a lawsuit arises when: (1) the allegations in the underlying tort complaint potentially fall within the policy's coverage provisions, and in addition (2) the insurer has actual notice of the underlying lawsuit. Cincinnati Companies v. West American Insurance Co., 183 Ill. 2d 317, 323, 329, 233 Ill. Dec. 649, 701 N.E.2d 499, 502, 505 (1998). In general, when the insurer wishes to contest coverage where its policy includes a duty to defend, it must either defend the suit under a reservation of rights or seek a declaratory judgment that there is no coverage. Employers Insurance of Wausau v. Ehlco Liquidating Trust, 186 Ill. 2d 127, 150, 237 Ill. Dec. 82, 708 N.E.2d 1122, 1134-35 (1999). Where the insurer fails to do either of these things and is subsequently found to have wrongfully denied coverage, it is estopped from raising any policy defenses to coverage. Employers Insurance of Wausau, 186 Ill. 2d at 150-51, 237 Ill. Dec. 82, 708 N.E.2d at 1135. This estoppel doctrine does not apply, however, when the insurer had no duty to defend or if its duty to defend was not

> properly triggered. <u>Employers Insurance of
> Wausau</u>, 186 Ill. 2d at 151, 237 Ill. Dec. 82, 708
> N.E.2d at 1135. Accordingly, whether a party is
> estopped from asserting any policy defenses rests
> upon the previously stated conditions precedent
> to triggering a duty to defend--whether the
> insurer had actual notice of the underlying
> lawsuit and whether the allegations in the
> underlying tort complaint potentially fell within
> the policy's coverage provisions. <u>Cincinnati
> Companies</u>, 183 Ill. 2d at 323, 329, 233 Ill. Dec.
> 649, 701 N.E.2d at 502, 505.

<u>Progressive</u>, 807 N.E.2d at 586-87.

Admiral contends neither of the conditions precedent applies because it was unaware LMB was an insured and there was no duty to defend. The first condition does not require that the insured actually or formally requests a defense; the insurer may be aware through whatever source that an action potentially falling within coverage has been commenced. <u>Id.</u> at 587; <u>Cincinnati Cos.</u>, 701 N.E.2d at 505. Here, Admiral was aware of the Underlying Action through its representation of 2Xtreme and therefore aware that LMB was also a named defendant in the Underlying Action. Although LMB was not expressly named as an insured in the Policy, the Policy provided that 2Xtreme's distributors were additional insureds and the Underlying Complaint expressly alleged that LMB was a distributor of 2Xtreme. Under Illinois law, that would appear to be sufficient to satisfy the first condition precedent. That issue, however,

need not be resolved because Pak makes no argument that the second condition precedent is satisfied.

The other condition precedent is that there was a duty to defend. An insurer's duty to defend is broader than its duty to indemnify. The General Star Indemnity Co. v. Lake Bluff School District No. 65, ___ Ill. App. 3d ___, ___ N.E.2d ___, 2004 WL 2676558 *3 (2d Dist. Nov. 22, 2004). An insurer must provide a defense unless the allegations of the complaint "clearly show on their face that the claim is beyond coverage." Id. In other words, there is a duty to defend if the allegations of the underlying complaint "potentially" or "arguably" fall within at least one category of coverage under the applicable policy. Id.; Housing Authority Risk Retention Group, Inc. v. Chicago Housing Authority, 378 F.3d 596, 603 (7th Cir. 2004); Lexmark International, Inc. v. Transportation Insurance Co., 327 Ill. App. 3d 128, 761 N.E.2d 1214, 1221 (1st Dist. 2001), appeal denied, 198 Ill. 2d 617, 770 N.E.2d 220 (2002); Old Republic Insurance Co. v. Chuhak & Tecson, P.C., 84 F.3d 998, 1001 (7th Cir. 1996). In the present case, however, Pak has not disputed Admiral's argument that the date of the myocardial infarction alleged in the Underlying Action establishes that there was no duty to defend because that date preceded the Retroactive Date of the Policy.

The Underlying Complaint alleged that the ingestion of 2Xtreme's product and the myocardial infarction both occurred in May 1997. The Underlying Complaint also alleged permanent injuries from the infarction and thus injuries and damages would have continued into October 1997 and beyond. Although the claim was brought within the coverage period for claims made, the Retroactive Date provision also had to be satisfied. That required that the "bodily injury," defined as "bodily injury, sickness or disease sustained" by the claimant, not occur before the Retroactive Date. It could be asserted that plaintiff's permanent injuries constituted bodily injury as of and after the Retroactive Date. However, the Illinois Supreme Court has previously construed the plain meaning of insurance policy language identical to the Policy's definition of bodily injury. The Illinois Supreme Court has held that this language means that "bodily injury" is sustained when the claimant is first exposed to the product; "sickness" occurs when the claimant suffers some disorder or unsound condition but prior to clinical manifestation of the disease; and the "disease" is sustained when it is first capable of clinical detection and diagnosis. See Zurich Insurance Co. v. Raymark Industries, Inc., 118 Ill. 2d 23, 514 N.E.2d 150, 159-61 (1987). Thus, although effects continued thereafter, the latest that Pak's "bodily injury" occurred was in

May 1997 when the "disease" manifested itself in the form of the infarction. In any event, Pak makes no argument to the contrary.

Because the allegations of the Underlying Complaint did not support that a duty to defend LMB existed, Admiral is not estopped from denying indemnity for LMB's liability to Pak.

It is true, as Pak contends, that there is a special circumstance under which an insurer may still be required to indemnify an otherwise noncovered liability even though there is no estoppel based on the insurer's breach of its duty to defend. That circumstance, however, is not applicable to the present situation. If, despite the absence of a duty to defend, the insurer defends a party and provides a defense that is prejudicial to the party, the insurer will be liable for the prejudice that is caused. See Home Insurance Co. v. Three I Truck Line, Inc., 95 F. Supp. 2d 901, 904 (N.D. Ill. 2000). Admiral, however, provided no defense to LMB. Pak, standing in the shoes of LMB, cannot contend that LMB was improperly prejudiced by Admiral's failure to defend LMB when Admiral had no duty to defend LMB.

For the foregoing reasons, Pak is not entitled to a declaration that Admiral was required to defend or indemnify LMB. Since, in the present case, Pak was not the appropriate party to raise any indemnity or duty to defend claim of 2Xtreme, no opinion is expressed as to whether Admiral breached its duty to defend or indemnify 2Xtreme. Neither is any opinion expressed

regarding whether today's judgment related to LMB's liability to Pak would have a collateral estoppel effect regarding any claim Pak might subsequently attempt to bring in the name of 2Xtreme.

IT IS THEREFORE ORDERED that defendant's motion to dismiss construed as a motion for summary judgment [7-1, 12-1] is granted. The Clerk of the Court is directed to enter judgment in favor of defendant and against plaintiff dismissing plaintiff's cause of action with prejudice except that Count II of the Complaint is dismissed without prejudice.

ENTER:

_____
UNITED STATES DISTRICT JUDGE

DATED: DECEMBER 8, 2004